LDIR, LLC v DB Structured Prods., Inc. (2019 NY Slip Op 03154)





LDIR, LLC v DB Structured Prods., Inc.


2019 NY Slip Op 03154


Decided on April 25, 2019


Appellate Division, First Department


Richter, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 25, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick, J.P.
Rosalyn H. Richter
Peter Tom
Marcy L. Kahn
Peter H. Moulton, JJ.


652985/12 650949/13 

[*1]LDIR, LLC, etc., et al., Plaintiffs, Ace Securities Corp. Home Equity Loan Trust, Series 2007-ASAP1, by HSBC Bank USA, National Association, as Trustee, Plaintiff-Appellant,
v
DB Structured Products, Inc., Defendant-Respondent, HSBC Bank USA, National Association, as Trustee, Defendant, Ace Securities Corp. Home Equity Loan Trust, Series 2007-ASAP1, Nominal Defendant.
Freedom Trust, etc., Plaintiff, Ace Securities Corp., Home Equity Loan Trust, Series 2006-FM1, by HSBC Bank USA, National Association, as Trustee, Plaintiff-Appellant,
v
DB Structured Products, Inc., Defendant-Respondent, [*2]HSBC Bank USA, National Association, in its capacity as Trustee of ACE Securities Corp. Home Equity Loan Trust, Series 2006-FM 1, Nominal Defendant.



Plaintiff HSBC Bank USA, National Association, Trustee, appeals
from the orders of the Supreme Court, New York
County (Marcy S. Friedman, J.), entered March 29, 2018, which granted defendant DB Structured Product's motions to dismiss the first amended complaints, and denied plaintiff Trustee's motions for leave to file proposed second amended complaints.




Holwell Shuster & Goldberg LLP, New York (Brandon DeMay, Michael S. Shuster, Neil R. Lieberman and Jack L. Millman of counsel), for appellant.
Simpson Thacher & Bartlett LLP, New York (William T. Russell, Jr., Isaac Rethy, John A. Robinson and Magdey Abdallah of counsel), for respondent.



RICHTER, J.


These consolidated appeals arise from two residential mortgage backed securitization transactions. Defendant DB Structured Products, Inc. (DBSP) was the sponsor of each of the securitizations. As sponsor, DBSP selected and purchased a pool of residential mortgage loans from various loan originators, and then sold the loans, through intermediary ACE Securities Corp. (ACE), to two securitization trusts. The trusts, in turn, issued securities backed by the loans that were sold to investors. The two securitizations were completed pursuant to materially identical Mortgage Loan Purchase Agreements (MLPAs) and Pooling and Servicing Agreements. Plaintiff HSBC Bank USA, N.A. (Trustee) is the trustee of the trusts in both securitizations.
In Section 6 of the MLPAs, DBSP made numerous representations and warranties about the quality of the loans, including that no fraud or misrepresentations had taken place, and that the loans were underwritten in accordance with the relevant guidelines. In Section 7, DBSP promised that, upon receiving notice or upon its own discovery of any breach of the representations and warranties, it would cure the breach, or else repurchase or substitute the mortgage loan. Section 7 also imposed a notice obligation on DBSP, ACE and the Trustee, stating that "[u]pon discovery by [DBSP], [ACE] or [the Trustee] . . . of a breach of any of the representations and warranties . . ., the party discovering such breach shall give prompt written notice to [DBSP]." As evident from the plain language, this notice provision is nonsensical because it requires DBSP to give notice to itself of breaches it discovers.
After the transactions closed, DBSP performed a due diligence review of the mortgage loans and allegedly learned of numerous breaches of representations and warranties, yet never notified the Trustee, or any other party to the transaction, of those breaches. As relevant here, the Trustee moved for leave to file second amended complaints alleging that DBSP (i) breached the agreements by conveying loans that were not in accord with the representations and warranties, and (ii) violated its express and implied contractual duty to notify the Trustee of the loan [*3]breaches. The motion court denied the Trustee's motions, concluding that the failure to notify claims were not viable because the governing agreements did not, either expressly or impliedly, require DBSP to notify the Trustee of DBSP's discovery of breaching loans. The court also found that the breach of representation and warranties claims were untimely. These consolidated appeals ensued.
It is well settled that "[a] request for leave to amend a complaint should be freely given, and denied only if there is prejudice or surprise resulting directly from the delay, or if the proposed amendment is palpably improper or insufficient as a matter of law" (CIFG Assur. N. Am., Inc. v J.P. Morgan Sec. LLC, 146 AD3d 60, 64-65 [1st Dept 2016] [internal quotation marks omitted]). "A party opposing leave to amend must overcome a heavy presumption of validity in favor of [permitting amendment]" (McGhee v Odell, 96 AD3d 449, 450 [1st Dept 2012] [internal quotation marks omitted]).
Judged by these standards, the motion court should have granted the Trustee's motions for leave to file the amended complaints with respect to the express breach of contract claims based on DBSP's failure to notify the Trustee of the loan breaches [FN1]. It cannot be said, at this early stage of the proceedings, that these claims are "palpably improper or insufficient as a matter of law" (see CIFG Assur., 146 AD3d at 65 [internal quotation marks omitted]). Nor has DBSP asserted, let alone shown, that it would suffer any prejudice or surprise directly resulting from the delay.
In rejecting the Trustee's attempt to amend the complaints, the dissent concludes that the parties' agreements do not impose any express obligation on DBSP to provide notice to the Trustee of breaches of representation and warranties. In fact, the relevant contractual language contained in Section 7 of the MLPAs is ambiguous on this point. A contract is unambiguous if "on its face [it] is reasonably susceptible of only one meaning" (Greenfield v Philles Records, 98 NY2d 562, 570 [2002]). Conversely, "[a] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings" (Feldman v National Westminster Bank, 303 AD2d 271, 271 [2003], lv denied 100 NY2d 505 [2003] [internal quotation marks omitted]).
The language at issue is ambiguous because, as noted earlier, it nonsensically obligates DBSP to provide notice to itself of breaches it discovers. Allowing the clause to remain as written would render this provision meaningless. Importantly, "[i]n construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless" (Two Guys from Harrison-N.Y., Inc. v S.F.R. Realty Associates, 63 NY2d 396, 403 [1984]; see Westview Assoc. v Guaranty Natl. Ins. Co., 95 NY2d 334, 339 [2000] [courts should avoid interpretations that would render contractual language mere surplusage]).
The parties set forth two reasonable interpretations that would give meaning to the disputed provision. In the Trustee's view, because DBSP is included in the list of entities that are required to provide notice, in order for the provision to make sense, there must be some entity, other than DBSP, that DBSP must notify. Thus, the Trustee would give meaning to the provision by adding language to make clear that other entities were entitled to notice. DBSP, on [*4]the other hand, argues that the only entity entitled to receive notice under the provision is DBSP, and that, due to "alleged drafting imperfections," DBSP was mistakenly included in the list of entities obligated to give notice. Thus DBSP would give meaning to the provision by excising the language that requires DBSP to provide notice.
We should not, at the pleading stage of this litigation, choose between the parties' two reasonable competing interpretations. The dissent, although recognizing that the provision requires DBSP to notify itself, resolves the ambiguity in DBSP's favor by excising language from the provision. The dissent's decision to adopt DBSP's interpretation over that of the Trustee cannot be reconciled with the Court of Appeals' decision in Castellano v State of New York (43 NY2d 909 1978]). In that case, the use of a certain word in a part of a lease clause was grammatically inconsistent with the rest of the lease. The parties offered two different reasonable ways to change the clause so as to make it grammatically correct. As here, each of those ways involved altering a word in the lease. Rather than choosing one suggested alteration over the other, the Court remitted the matter for further proceedings to "explore all that may be offered to show what is the proper interpretation of [the disputed language]" (43 NY2d at 912).[FN2]
Likewise here, because the disputed provision is reasonably susceptible to more than one interpretation, "it cannot be construed as a matter of law, and dismissal . . . is not appropriate" (Telerep, LLC v U.S. Intl. Media, LLC, 74 AD3d 401, 402 [1st Dept 2010]). Instead, the matter should proceed to discovery as to the parties' intent (see Foot Locker, Inc. v Omni Funding Corp. of Am., 78 AD3d 513 [1st Dept 2010] [where notice provision in a contract was ambiguous, parol evidence is necessary to interpret the provision]; 330 W. 86th St., LLC v City of New York, 68 AD3d 562, 563-564 [1st Dept 2009] ["Resolution of . . ambiguities (in a deed) must await discovery as to the intent of the parties"]; Federal Ins. Co. v Americas Ins. Co., 258 AD2d 39, 43 [1st Dept 1999] ["Where . . . internal inconsistencies in a contract point() to ambiguity, extrinsic evidence is admissible to determine the parties' intent"]).
Although further discovery is needed to determine whether the parties intended to provide for an express obligation to notify the Trustee, no such implied duty exists. Thus, the court properly denied leave to amend to add claims for breach of the implied covenant of good faith and fair dealing (see Phoenix Capital Invs. LLC v Ellington Mgt. Group, L.L.C., 51 AD3d 549, 550 [1st Dept 2008]). Further, those claims are duplicative of the express failure to notify claims (see MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d 287, 297 [1st Dept 2011]).
Finally, for the reasons stated in ACE Sec. Corp. v DB Structured Prods., Inc. (112 AD3d 522 [1st Dept 2013], affd 25 NY3d 581 [2015]), the breach of contract claims based on breaches of representations and warranties accrued on the closing date of the MLPAs, and are barred by the six-year statute of limitations on contract causes of action (CPLR 213[2]; see also Nomura Asset Acceptance Corp. Alternative Loan Trust v Nomura Credit & Capital, Inc., 139 AD3d 519, 520 [1st Dept 2016]).
Accordingly, the orders of the Supreme Court, New York County (Marcy S. Friedman, J.), entered March 29, 2018, which granted defendant DBSP's motions to dismiss the first amended complaints, and denied plaintiff Trustee's motions for leave to file proposed second amended complaints, should be modified, on the law, to grant the Trustee's motions for leave to [*5]file the amended complaints solely with respect to the express breach of contract claims based on DBSP's failure to notify the Trustee of the loan breaches, and otherwise affirmed, without costs.
All concur except Tom, J.
who dissents in part in an Opinion.




TOM, J. (dissenting in part)


I disagree with the conclusion of the majority that the relevant contract language was ambiguous and requires further fact-finding, and respectfully dissent. Plaintiff trustee alleges that defendant breached its contractual obligations to notify the trustee of breaches of representations and warranties, breached the implied covenant of good faith and fair dealing, and breached representations and warranties in connection with pools of residential mortgage loans in securitizations governed by Mortgage Loan Purchase Agreements (MLPA) and Pooling and Servicing Agreements (PSA).
Assuming each proposed amended complaint pleads a breach of contract claim based on an express contractual duty to notify the trustee, the claim nevertheless fails, because there is no such duty in the agreements. The MLPA and PSA in each case do not require defendant to give notice to the trustee or other parties of breaches of representations and warranties.
Section 7 of the MLPA is titled "Repurchase Obligation for Defective Documentation and for Breach of Representation and Warranty." Section 7(a) states,
"Upon discovery by the Seller [defendant], the Purchaser or any assignee, transferee or designee of the Purchaser [i.e., the trustee] . . . of a breach of any of the representations and warranties contained in Section 6 that materially and adversely affects the value of any Mortgage Loan ..., the party discovering such breach shall give prompt written notice to the Seller [defendant]."
This provision obligates other parties to give notice to defendant of breaches they discover, but does not require defendant to notify anyone, including the trustee, of breaches it discovers. Hence, on this basis the intent of the parties is evident in the unambiguous contractual language that the seller must receive notice as a predicate to its obligation to cure, as further defined in 7(a). Once the seller received notice, regardless from whom, it was obligated to cure. The majority's conclusion that further fact-finding with respect to the intent of the parties is necessary contravenes the contractual language and the intent of the parties.
The next sentence in section 7(a) of the MLPA states that within 60 days of the Seller's "discovery or its receipt of notice of" any such breach, the Seller shall cure the breach or else repurchase or substitute the loans within 90 days of its "discovery or receipt of notice" of the breach. Thus, defendant's obligation to repurchase any loans in breach of the representations and warranties pursuant to section 7 is triggered only by its learning of the breach, either by discovering the breach itself or by being notified of the breach by another party. There is no need for defendant to notify anyone else to trigger or fulfill its obligation to remedy any breach.
Plaintiff correctly points out that Section 7(a) requires that "[u]pon discovery by the Seller . . . of a breach . . . the party discovering such breach shall give prompt written notice to the Seller," i.e., that defendant notify itself. However, this requirement does not create an ambiguity. While courts ordinarily try to avoid treating contractual language as "surplusage" (Maxine Co., Inc. v Brinks's Global Servs. USA, Inc., 94 AD3d 53, 56 [1st Dept 2012]), I conclude that the requirement may be excised without either a trial or discovery, because our interpretation is consistent with the parties' intent with respect to that clause and the contract as a whole (see Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014]). It is also consistent with a [*6]similar provision in the PSA. Section 2.03 of the PSA states that if the trustee discovers that the "Sponsor," defined elsewhere as defendant, materially breached any representation or warranty under the MLPA, "the Trustee shall promptly notify [defendant] and the Servicer" of the breach and ask defendant to cure the defect within 60 days of the notice or repurchase the Mortgage Loan within 90 days of the notice.
As the motion court correctly observed, the narrow language in the MLPAs and PSAs, which requires notice to defendant only, renders this case distinguishable from cases in which this Court found a "failure to notify" claim. Those cases imposed an express contractual obligation on the defendants to notify other parties of a breach of a representation or warranty (see e.g. Bank of N.Y. Mellon v WMC Mtge., LLC, 151 AD3d 72, 75 [1st Dept 2017]; Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 133 AD3d 96, 101 [1st Dept 2015], mod 30 NY3d 572 [2017]).
Nor is there any basis for inferring an implied contractual duty to notify the trustee. Plaintiff correctly points out that without a requirement that defendant, which is in a better position to discover problems with the underlying loans, notify the trustee when it discovers any breaches, the trustee might not discover such breaches in time to enforce compliance with the repurchase protocols. However, plaintiff, a sophisticated party to the transaction, did not negotiate the inclusion of such a notice requirement in the MLPA (see Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 476 [2004]; see MBIA Ins. Corp. v Countrywide Home Loans, Inc., 105 AD3d 412, 413 [1st Dept 2013]). I decline to read into the contract the implied obligation which the majority's conclusion would allow.
It follows that the motion court correctly dismissed the claims of breach of the implied covenant of good faith and fair dealing based on an implied duty on defendant's part to notify the trustee (see Phoenix Capital Invs. LLC v Ellington Mgt. Group, L.L.C., 51 AD3d 549, 550 [1st Dept 2008]; Skillgames, LLC v Brody, 1 AD3d 247, 252 [1st Dept 2003]; Triton Partners v Prudential Sec., 301 AD2d 411 [1st Dept 2003]). In any event, those claims are duplicative of the failure to notify claims (see Deutsche Bank Natl. Trust Co. v Quicken Loans Inc., 810 F3d 861, 869 [2d Cir 2015]; MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d 287, 297 [1st Dept 2011]).
For the reasons stated in ACE Sec. Corp. v DB Structured Prods., Inc, (112 AD3d 522 [1st Dept 2013], affd 25 NY3d 581 [2015]), the breach of contract claims based on breaches of representations and warranties accrued on the closing date of the MLPAs, and are in both cases barred by the six-year statute of limitations on contract causes of action (CPLR 213[2]; see also Nomura Asset Acceptance Corp. Alternative Loan Trust v Nomura Credit & Capital, Inc., 139 AD3d 519, 520 [1st Dept 2016]).
Orders, Supreme Court, New York County (Marcy S. Friedman, J.), entered March 29, 2018, modified, on the law, to grant the Trustee's motions for leave to file the amended complaints solely
with respect to the express breach of contract claims based on DBSP's failure to notify the Trustee of the loan breaches, and otherwise affirmed, without costs.
Opinion by Richter, J. All concur except Tom, J. who dissents in part in an Opinion.
Renwick, J.P., Richter, Tom, Kahn, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 25, 2019
CLERK



Footnotes

Footnote 1: There is no merit to DBSP's alternative argument that the failure to notify claims were not properly pleaded. The proposed second amended complaints specifically allege that DBSP violated its express contractual obligation to notify the Trustee of loan breaches. This allegation suffices under New York's liberal pleading rules to give DBSP sufficient notice of the claim, and DBSP has suffered no prejudice.

Footnote 2: We disagree with the dissent's view that other provisions in the agreements make clear the parties' intent as to the disputed language. These other provisions shed little light on whether the parties intended for DBSP to notify the Trustee of loan breaches, and do not resolve, as a matter of law, the ambiguity presented here.