**Island Consol. v Grassi & Co., Certified Public Accountants PC**

2025 NY Slip Op 30094(U)

January 7, 2025

Supreme Court, New York County

Docket Number: Index No. 451469/2023

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 49M

-------------------------------------------------------------------------------X

ISLAND CONSOLIDATED, EASTERN MATERIALS
CORP., ISLAND INTERNATIONAL EXTERIOR
FABRICATORS LLC,ISLAND EXTERIOR FABRICATORS
LLC

|  |  |  |
|---|---|---|
| **INDEX NO.** | | 451469/2023 |
| **MOTION DATE** | | 12/18/2023 |
| **MOTION SEQ. NO.** | | 001 |

Plaintiff,

- v -

GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS
PC,

Defendant.

**DECISION + ORDER ON
MOTION**

-------------------------------------------------------------------------------X

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85
were read on this motion to/for                                    DISMISS                                    .

In this professional malpractice action, plaintiffs Island Consolidated, Eastern Materials Corp., Island International Exterior Fabricators Del LLC, and Island Exterior Fabricators LLC (hereinafter collectively referred to as "Island" or "Plaintiffs") allege professional malpractice and gross negligence against their accountant, defendant Grassi & Co., Certified Public Accountants PC for the sales tax advice it gave plaintiffs in 2015. In reliance on defendant's 2015 sales tax advice, plaintiffs sustained monetary damages through tax penalties and interests on repayment costs to the New York State Department of Taxation and Finance, costs, and lost profits. Defendant moves to dismiss plaintiffs' Amended Complaint for failure to: (1) comply with the condition precedent before bringing a suit against defendant; (2) timely bring their claims within the three-year statute of limitations; and (3) state a cause of action with sufficiency. Alternatively, defendant urges dismissal of damages on the grounds that they are not recoverable and is limited by the parties' agreement. Plaintiffs oppose the motion.

For the reasons stated below, defendant's motion is denied.

## BACKGROUND

Defendant Grassi & Co., Certified Public Accountants P.C. (Grassi) is a domestic professional service corporation having its principal place of business in

451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC
ACCOUNTANTS PC
Motion No.  001

Page 1 of 15

New York (NYSCEF # 11 – Amended Complaint [AC] ¶ 7). Grassi held itself out to be experienced in advising manufacturing and construction businesses, and possessing the skill, ability and experience of certified public accountants and auditors specially qualified to render advice concerning federal, state and local taxes, particularly to manufacturing and construction companies concerning their liability for payment of sales and use taxes in New York State (*id.* ¶ 9).

Between 2009 and 2021, Island hired Grassi to perform services for within New York as an independent certified public accountant (*id.* ¶ 11). These services included rendering professional advice regarding federal, state and local tax matters, including sales tax matters, and preparing all of plaintiffs' federal, state and local tax returns, and notably, those of its principals (*id.*). Prior to 2015, and even prior to his regular assignment to the Island account at Grassi, Grassi principal William Fischer, CPA approached and advised one of Island's principals, Tim Stevens, on multiple occasions (*id.* ¶ 15). Fischer advised Stevens that he believed the Island entities were not availing themselves to state sales tax exemptions afforded to manufacturers in New York, and that Island could realize a significant savings if they allowed Grassi to advise them on reorganizing their corporate structure (*id.*).

To retain Grassi, plaintiffs and their principals were required to and did agree on at least eleven occasions to be bound by terms set forth in written Engagement Letters between the parties (NYSCEF # 18 – Wilck Aff at ¶ 4; NYSCEF # 61 – 71, Exhs C through M – Engagement Letters [from 2009–2020]). These Engagement Letters defined the scope of services to be provided and of Grassi's responsibilities while also specifying that all managerial decisions and compliance with any laws or regulations applicable to its activities were the sole responsibility of Island (*id.*). The Engagement Letters contained a notice of claim provision within the Fees subsection, requiring plaintiffs to notify Grassi of any such claim within one year from the date of the completion of the subject services and to pursue the prescribed mediation within 90 days of notice as a condition precedent to bringing suit (*id.*). By entering into the Engagement Letters, plaintiffs also agreed to limit Grassi's liabilities to the lesser of actual damages incurred or two times the amount of the fee paid for the specific services from which the claimed damages arose (*see* NYCSEF # 66 – 2015 Engagement Letter at Exh H). The limitation of liability provision also specified that in no event shall Grassi be liable for any punitive, consequential, lost profits, or benefit-of-the-bargain damages in connection with the services rendered (*id.*).

On or about January 30, 2015, Grassi, through Fischer, agreed to meet and provide sales tax advice and guidance to Island, and the parties scheduled a meeting for April 10, 2015 (AC ¶ 20). Between January 30, 2015 and April 9, 2015, representatives from Island and Grassi exchanged numerous emails, and had numerous verbal conversations, concerning the sales tax questions and issues - a

451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC
Motion No. 001

Page 2 of 15

2 of 15

[* 2]

period of nearly 70 days (*id.* ¶ 26). At the April 10, 2015 meeting, Grassi advised Island that the Island entities, which manufactured and installed the building panels, were eligible for a manufacturer exemption which designates all material purchases used in the manufacturing process as eligible for exemption of sales tax (*id.* ¶28). They further advised that these sales tax exemptions existed regardless of whether the panels would be installed at property owned by an exempt organization or government entity (*id.* ¶ 29). As to the sales tax treatment and associated manufacturing exemptions (if any) in Connecticut, Massachusetts, and Pennsylvania, Grassi advised Island that they needed to and would research the relevant rules in those states (*id.* ¶ 30). But as to New York and New Jersey, however, Grassi did not indicate any further investigation was required (*id.*).

Island acted upon Grassi's advice and guidance (*id.* at ¶ 42). By April 14, 2015, Island's controller advised Island's principals and other members of its business team that immediate changes would need to be made to Island's systems to reflect the tax exempt status of its materials purchases (*id.*). Island commenced the "Sales Tax Recovery Project", the purpose of which was to: (1) implement changes to Island's materials purchasing processes; (2) claim as tax exempt purchases made for materials used as part of the manufacturing/fabrication process; (3) reorganize how Island handled the performance of their fabrication and installation obligations; and (4) pursue credits and/or reimbursement of sales tax paid by Island in prior years (*id.* ¶ 43). Island also implemented significant changes to their bid and contracting processes — contract bids made by Island after April 10, 2015 accounted for a significantly lesser sales tax liability (*id.* ¶ 44).

On May 5, 2015, Island directed Grassi to pursue reimbursement/credits with New York and New Jersey to recover sales tax paid in prior years on Island's behalf (*id.* ¶ 45). Following the April 10, 2015 meeting, and on numerous occasions from 2015 through June 16, 2020, Grassi, through Fischer and McCullough, allegedly consistently, continually, and repeatedly advised, both verbally and in writing, that Island did not need to pay sales tax on materials purchased for fabrication of panels at their New York facility (*id.* ¶ 47).

On June 16, 2020, in response to a request for a written memorandum detailing sales tax treatment to Island's operations, Grassi informed Island for the first time that sales tax advice/guidance it had given was wrong (*id.* ¶ 49). Plaintiffs allege that Grassi's June 16, 2020 analysis directly and unambiguously contradicted the sales tax advice and guidance that Grassi had previously provided to Island (*id* ¶ 51). Fischer, in his email transmitting the sales tax memorandum to Island, pointed out a section "highlighted in gray" where Grassi alleged that its 2020 findings were the result of New York state starting to challenge whether or not use tax is required to be paid on self-installed manufactured goods (*id.* ¶¶ 52-53).

**451469/2023 ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC**
**Motion No. 001**

**Page 3 of 15**

3 of 15

[* 3]

Plaintiffs allege that Grassi's June 16, 2020 findings did not reflect a change in New York state tax law (*id.* ¶ 54). Rather, a NYSDTF Advisory Opinion TSB-A-10(42)S, dated Sept 22, 2010, was directly on point and was contrary to the advice/guidance continuously given by Grassi to Island for 5 years (*id.* at ¶¶ 54-55). Plaintiffs maintain that the opinion was accessible to the public at large and to Grassi prior to the April 10, 2015 meeting, along with other earlier NYSDTF Advisory Opinions that match the findings set forth in Grassi's June 16, 2020 memorandum (*id.* ¶¶ 58-62).

According to plaintiffs, Grassi learned that the sales tax advice given to Island concerning the so-called manufacturing exemption was incorrect after April 10, 2015, but continued to give Island the incorrect guidance while providing different advice to other Grassi clients in the construction and manufacturing industries (*id.* ¶ 69*)*. Grassi also has admitted in an email dated February 4, 2021, that they failed to investigate and could not produce any writing documenting its basis or rationale for its prior sales tax advice and guidance (*id.* at ¶¶ 70-72).

On or about February 16, 2021, and as continuation of its representation of Island concerning sales tax issues since at least April 10, 2014, Grassi undertook the representation of Island in connection with a sales tax audit by the NYSDTF for multiple plaintiff companies, and for a time frame of March 2016 through the end of February 2020 (*id.* at ¶ 74). Plaintiffs allege that this sales tax audit representation undertaken by Grassi was and is a defense of the erroneous sales tax advice and guidance Grassi had given to Island beginning in April, 2015 (*id.)*.

Plaintiffs claim that Grassi's actions caused Island to suffer significant monetary damages, which includes repayment of sales tax liabilities, penalties, interest on the repayment amount, loss of profits, payment to Grassi in return for defective professional services and other direct and proximate damages (*id.* ¶ 75).

Defendant, in response to plaintiffs' claims, points out that the parties' Engagement Letters from 2009 to 2020 that have the same or substantially the same language with respect to plaintiffs' responsibilities, additional services, and conditions precedent for commencing suit (NYSCEF # 58 – Wilck Aff; NYSCEF #s 61-71 – Engagement Letters). Defendant argues that because plaintiffs failed to comply with the condition precedent, their complaint must be dismissed (NYSCEF # 39 – Deft's MOL at 3-4; NYSCEF # 85 – Reply at 2-3; Wilck Aff ¶¶ 39-40). Defendant maintains that the Engagement Letters apply and are enforceable, as plaintiffs themselves have acknowledged their applicability to this action (Deft's MOL at 3). And contrary to plaintiffs' assertion no Engagement Letters were entered into for the 2014-2015 sales tax advice, defendant argues that the "ADDITIONAL SERVICES" provision in all the Engagement Letters clearly states that "[a]ny additional services that you may request, that we agree to provide, may be subject of separate written agreements. . . [which] in the absence of any other

**451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC
Motion No. 001**

**Page 4 of 15**

written communication from us documenting such additional services, our services will continue to be governed by the terms of this Engagement letter" (*id.* at 5). Defendant states that no separate written agreement or amendment, other than the Engagement Letter, was entered into with respect to the alleged advice that was given in 2014-2015. Defendant claims that plaintiffs agreed to the specific terms and conditions set forth in the Engagement Letters on at least seven occasions after 2012 without objection (*id.*).

Defendant raises the three-year statute of limitations for professional malpractice claims as barring plaintiff's suit on the 2015 sales tax advice that defendant did not work on since 2015 forestalling plaintiffs' argument on continuous representation (*id.* at 9-11).

As to the plaintiffs' claims for gross negligence and intentional misrepresentation, defendant argues that plaintiffs failed to state a cause of action for these claim as their allegations are insufficient. Further, defendant argue that the misrepresentation claim should be dismissed also because it is duplicative of the malpractice claim.

Finally, defendant argues that absent gross negligence, plaintiffs' damages claims are limited by the parties' Engagement Letters.

## DISCUSSION

Defendant makes three arguments to dismiss the plaintiffs' claims: (1) failure to comply with a condition precedent set forth in the Engagement Letters; (2) the three-year statute of limitations bars this suit; and (3) plaintiffs fail to state a cause of action based on documentary evidence, or allege their intentional misrepresentation with specificity, which claim is also duplicative of their professional malpractice claim, or allege their gross negligence claim with sufficiency. Each of the three arguments with plaintiffs' corresponding opposition[1] will be addressed in turn starting with defendant's statute of limitations argument, followed by the condition precedent issue, the failure to state a cause of action arguments, and finally, the damages issue.

---

[1] Plaintiffs preface their opposition to defendant's motion with an objection to defendant's submission of an affirmation by its counsel, David Wilck, Esq., because Wilck cannot be a witness, his opinions are inadmissible and his attached exhibits N-S, which Wilck uses as a basis of his conjectures are also inadmissible (NYSCEF # 80, Pltfs' MOL at 4-5; NYSCEF #'s 72-77 exhs N-S [Tax Refund, email, audit letter, app for refund, IRS audit schedule letter of 4/7/2020]). This argument prompted a reply argument from defendant pointing to the affirmation by plaintiffs' counsel, William Vita, Esq., whom defendant claims has no knowledge of the facts and whose speculation on possible forthcoming unspecified evidence from plaintiff, as well as the entire affirmation, should be disregarded (NYSCEF # 85 – Defts' Reply at 1). The parties' tit-for-tat arguments are unwelcomed and will not be addressed.

**451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC**
**Motion No.  001**

**Page 5 of 15**

5 of 15

[* 5]

On a motion to dismiss under CPLR 3211(a)(1), a party may move for judgment dismissing one or more causes of action asserted against him on the ground that a defense to the asserted claim is founded upon documentary evidence (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002]]). And on a motion to dismiss under CPLR 3211(a)(7), the court must accept the facts alleged in the complaint as true and accord plaintiffs the benefit of every possible favorable inference, determining only whether the facts as alleged "fit within any cognizable legal theory" (*Tax Equity Now N.Y. LLC v City of New York et al.*, 42 NY3d 1, 6 [2024], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). However, if the allegations consist of bare legal conclusions and factual claims that are either inherently incredible or flatly contradicted by documentary evidence, such benefit is not warranted (*511 W. 232nd Owners Corp*, 98 NY2d at 153 [denying defendant's motion to dismiss because the documentary evidence did not clearly refute plaintiff's allegations]).

1.  Statute of Limitations

Defendant argues that plaintiffs' causes of action based on malpractice for its sales tax advice in 2015 are barred by the three-year statute of limitations for professional malpractice (*id.* at 9-11). And because such a claim accrues when the malpractice is initially committed, plaintiffs' claims for professional malpractice expired in 2018 (*id.* at 10). Defendant adds that the continuous representation doctrine did not toll the statute of limitations here because the recurrence of any professional relationship between the parties was limited to incidental and general advising and not specific to the 2015 advice (*id.* at 11).

In opposing defendant's statute of limitations argument, plaintiffs contend that the parties had an understanding that more work is needed and that defendant had to engage in corrective measures or remedial measures (*id.* at 18). Citing *Shumsky v Eisenstein* (96 NY2d 164, 168 [2001]), plaintiffs assert that "[f]or accounting malpractice, the statute of limitations begins to run when the accounting representation is completed. The continuous representation doctrine tolled the statute of limitations for plaintiffs' cause of action such that their complaint is timely" (*id.* at 18-19). Plaintiffs contend that defendant continued to provide their professional advice and guidance on the sales tax issues from 2015 through late 2021 and dealt with tax authorities to try to avoid the very sales taxes that defendant had claimed were not taxable (*id.*). Plaintiffs claim that defendants were engaged in continuous represent which tolls the statute of limitations for accounting malpractice (*id.* at 18 citing *Lemle v Regen, Benz & MacKenzie, CPA, PC*, 165 AD3d 414, 415 [1st Dept 2018]).

Pursuant to CPLR 214[6], the statute of limitations for accounting malpractice is three years. New York courts have held that a professional malpractice claim accrues at the time "the malpractice is committed, not when the

451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC
ACCOUNTANTS PC
Motion No. 001

Page 6 of 15

[* 6]

6 of 15

clients discover it" (*Williamson ex rel. Lipper Convertibles, L.P. v PricewaterhouseCoopers LLP,* 9 NY3d 1, 8 [2007]); *see also Lemle* 165 AD3d at 414 [finding professional malpractice accrued when the client filed tax returns, not when client discovered they were wrong]). However, the continuous representation doctrine will toll a statute of limitations on a professional malpractice action when there is a continuing professional relationship between parties that specifically pertains to the matter in which the alleged malpractice was committed in the first place (*see Shumsky,* 96 NY2d 164).

The continuous representation doctrine does not apply in cases where the professional relationship merely continues with later services that are not related to the original services (*see Ackerman v PricewaterhouseCoopers,* 252 AD2d 179 [1st Dept 1998]; *see also CLP Leasing Co., LP v Nessen,* 12 AD3d 226 [1st Dept 2004]). However, the continuous representation doctrine has been found to toll a statute of limitations where defendant undertook to defend or explain earlier advice they had provided or where the defendant represented plaintiffs in audited investigations by the IRS (see *Ackerman,* 252 AD2d 179 [holding defendants' repeated use of an improper accounting method, repeated failure to disclose risks associated with it, and representations that it was handling an IRS audit in relation was enough evidence to support the application of continuous representation]; *see also Lemle,* 165 AD3d 414 [holding continuous representation doctrine tolled statute of limitations where without any new engagement by plaintiff, defendants undertook to respond to audit letter and defend or explain the treatment given on an earlier 2012 return and service was related to the alleged malpractice in 2012]; *cf. Apple Bank for Sav. v PricewaterhouseCoopers LLP,* 70 AD3d 438, 438 [1st Dept 2010] [holding continuous representation doctrine did not toll statute of limitations even where defendant audited plaintiff's year-end financial statements, prepared its tax returns and provided ad hoc tax advice to plaintiff because the parties never had an express, mutual agreement to advise plaintiff after the original advice]).

Here, plaintiffs have alleged sufficient facts establishing that the continuous representation doctrine tolled the statute of limitations for professional malpractice in this case. While the follow-up June 16, 2020, memorandum and follow-up 2021 emails do repeat, clarify, and elaborate on the advice first given, this alone is likely not sufficient to rise to what is needed to trigger the continuous representation doctrine (*see Apple Bank for Sav.,* 70 AD3d at 438). However, plaintiffs here also allege and demonstrate that defendant continued to provide their professional advice and guidance regarding sales taxes by defending a tax appeal on the exact issues through late 2021 (see *Lemle,* 165 AD3d at 414). These allegations support a reasonable inference that the parties' professional relationship was not just comprised of a recurrence of general duties.

Accordingly, defendant's motion to dismiss the amended complaint as barred by the statute of limitations is denied.

451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC
ACCOUNTANTS PC
Motion No. 001

Page 7 of 15

7 of 15

[* 7]

## 2. Condition Precedent

Defendant argues that because plaintiffs failed to comply with the terms of the Engagement Letters by failing to give defendant requisite notice of claim within one year of completion of subject services and failing to seek mediation as a condition precedent to bring suit, the complaint should be dismissed (NYSCEF # 39 – Deft's MOL at 5-9). Defendant contends that the Engagement Letters signed by both parties are binding and dispositive (*id.* at 5). Defendant states that plaintiffs agreed that written notice of the dispute was required to be provided within one year from the date of completion of the subject services and that mediation was a condition precedent to bringing suit (*id.* at 6-8). Defendant informs that while the alleged advice and services rendered occurred in 2015, plaintiffs' notice of a potential claim came on June 6, 2022, and their request for mediation followed five months thereafter (*id.* at 8).

Plaintiffs assert that the Engagement Letters attached as defendants' exhibits C-M (NYSCEF #'s 61-71) do not apply to the 2014-2015 sales tax advice because other "written communications" sufficiently document the advice and the subject services are not covered by any Engagement Letters (Pltfs' MOL at 6). The sales tax advice at issue is evidenced in written communications and in emails from April 2015 and 2020-2021 (*id.* at 7). Thus, plaintiff concludes that the condition precedent in the Engagement Letters do not apply to the 2014-2015 sales tax advice.

In any event, plaintiffs address the required one-year notice of claims upon completion of services. Plaintiffs assert that in December 2021 they had asked defendants to let their insurer know to expect claims to be forthcoming, and in June 2022, defendant was put on notice of plaintiffs' claim against it with the summons with notice for this suit (*id.* at 9; NYSCEF # 59, Exh A – Summons). Plaintiffs claim that the notice was timely because until at least October 28, 2021, defendant was working on the tax appeal on the 2015 sales tax advice. Hence, plaintiffs conclude that the "completion of services" was at the end of October 2021 (Pltfs' MOL at 9).

Contractual provisions that place a requirement on plaintiffs to file a notice of claim or to seek mediation before they can bring suit are commonly approved and upheld by New York courts as valid conditions precedent (see *A.H.A. General Const., Inc. v New York City Housing Authority,* 92 NY2d 20, 31-32 [1998] [holding a provision requiring plaintiffs to serve a timely notice of claim was a valid condition precedent, and not an exculpatory clause]). Failure to comply has often been found as a reason for dismissal of a plaintiffs' complaint (see *Archstone Dev. LLC v Renval Constr. LLC,* 156 AD3d 432, 433 [1st Dept 2017] [holding lower court correctly dismissed breach of contract claim on the ground that plaintiff failed to satisfy a condition precedent of pursuing mediation prior to bringing suit]; *see also*

**451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC**
**Motion No. 001**

**Page 8 of 15**

*Centennial Elevator Industries, Inc. v JRM Construction Management, LLC*, 212 AD3d 457, 458 [1st Dept 2023] [same].

If a condition precedent operates to potentially waive a claim before the applicable statute of limitations has expired, it may be examined as to whether it serves to make the time for bringing suit "unreasonably short" (see *Planet Constr. Corp. v Board of Educ. of City of N.Y.,* 7 NY2d 381, 385 [1960]). At the same time, CPLR § 201 itself allows for written agreements to prescribe a shorter time within which an action is to be commenced (see CPLR §201). New York courts have thus upheld contractual limitations waiving claims not brought within a period of time as short as one year or even 90 days (*see Assured Guar. (UK) Ltd. v J.P. Morgan Inv. Mgt. Inc.,* 80 AD3d 293, 304 [1st Dept 2010] [holding a 90 day limit for asserting objections set forth in the parties' investment management agreement was reasonable as a matter of law]; *see also APR Energy Holdings Ltd. v Deloitte Tax LLP,* 209 AD3d 402, 403 [1st Dept 2022] [upholding a provision in engagement letter that required suits to be commenced within 1 year of accrual]).

Here, the Engagement Letters from 2012 to 2020 include provisions requiring plaintiffs to provide notice of claim within one year from the date of the completion of the subject services and to pursue mediation within 90 days after (*see e.g.* Exhs C through M). These provisions make it such that noncompliance renders a plaintiff's claim as waived (*see David Fanarof, Inc. v Dember Const. Corp.,* 195 AD2d 346, 348 [1st Dept 1993]). However, none of these Engagement Letters cover the sales tax advice service. Thus, plaintiffs' point that the condition precedent in the Engagement Letters does not cover the sales tax service is well taken.

In any event, even if the condition precedent were to apply, dismissal is not appropriate at this point when the parties disagree over when "completion of subject services" occurred. Defendant argues that "completion of subject services" was limited and completed in 2015 and points to provisions within the Engagement Letters that caution plaintiffs that advice may change over time and not be applicable at a future date. However, plaintiffs point out that defendant continued services directly related to the advice at issue until 2021 when the subject services were completed.

As such, despite plaintiff's request to exclude the Engagement Letters in defendant's exhibits C through M, these exhibits raise a question of fact as to whether they apply to the sales tax advice and subsequent work thereon. Thus, defendants' motion to dismiss the amended complaint for plaintiffs' failure to comply with a condition precedent is denied.

3. Failure to State a Cause of Action

*Intentional Misrepresentation*

451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC
Motion No. 001

Page 9 of 15

9 of 15

Defendant argues that plaintiffs do not plead their claim for intentional misrepresentation with the adequate level of specificity as required for claims of fraud because the advice defendant gave was approved by the NYSDT.

Under New York law, to plead misrepresentation or fraud, "...though there is no requirement of "unassailable proof" at the pleading stage," the complaint must allege facts that "suffice to permit a reasonable inference of the alleged misconduct," (*see Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). "'[A]t the pleading stage of a fraud case against an accountant, the plaintiff need not be able to make an evidentiary showing of exactly what the accountant knew as to falsehoods in the certified financial statements'" (*Bullen v CohnReznick, LLP*, 194 AD3d 637, 637 [1st Dept 2021] [internal citation omitted]). "[A]ctual knowledge[,] [however,] need only be pleaded generally, [given], particularly at the prediscovery stage, that a plaintiff lacks access to the very discovery materials which would illuminate a defendant's state of mind [citation omitted]" (*Cohen Brothers Realty Corp. v Mapes*, 181 AD3d 401, 403-404 [1st Dept 2020]).

Here, plaintiffs have sufficiently pleaded negligent and intentional misrepresentation with sufficient particularity to survive the dismissal stage. Plaintiffs' complaint alleges that defendant falsely represented to plaintiffs that its conclusions in 2020 represented recent changes in law or changes in interpretation by the NYSDTF. Further, plaintiffs' complaint also points to advisory opinions from as early as 2003 as indication that defendant knew or should have known that it was misrepresenting factual information. Because at the pleading stage actual knowledge need only be pleaded to the extent that a plaintiff can produce information at the pre-discovery stage, plaintiffs have sufficiently pleaded negligent and intentional misrepresentation as to survive dismissal.

Defendant claims that because plaintiffs had in the Engagement letter agreed that all managerial decisions were their own responsibility, acknowledged that tax law was constantly changing, and stopped paying sales and use tax prior to any purported advice from Grassi, plaintiffs cannot demonstrate causation for their claims of accounting malpractice and misrepresentation (*id.* at 12-13). Defendant further maintains that documentary evidence shows there was no negligence or misrepresentation because one of plaintiffs received a refund for sales taxes paid in 2012 and 2014 and an approval of non-payment of sales tax for the period of 2014-2016 (*id.* at 12).

Under New York law, "[a] claim of professional negligence requires proof that there was a departure from the accepted standards of practice and that the departure was a proximate cause of the injury" (*Herbert H. Post & Co. v Sidney Bitterman, Inc.*, 219 AD2d 214, 223 [1st Dept 1996]). "'A plaintiff must establish, beyond the point of speculation and conjecture, a causal connection between its

451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC
ACCOUNTANTS PC
Motion No. 001

Page 10 of 15

[* 10]

10 of 15

losses and the [accountant's] actions'," (id.). A mere recitation that damages are proximately caused by misrepresentations and omissions will not be enough, especially where a complaint is to be pleaded with sufficient particularity (see *Friedman v Anderson,* 23 AD3d 163, 165 [1st Dept 2005] [finding that plaintiff failed to adequately plead facts sufficient to make out a claim for fraud where the complaint merely asserted that defendant knew his representations were false and made without any knowledge or factual support]).

Here, defendant's evidence does not utterly refute the alleged factual allegations in the complaint. Rather, these documents at most raise questions of fact as to the proximate cause of plaintiffs' alleged injury and the reasonableness of their reliance. Accepting plaintiffs' allegation as true that defendant gave incorrect advice to plaintiffs while providing different advice to similar clients, the court must further accept that had plaintiffs not followed the advice of defendant regarding sales tax advice and filed tax returns directly corresponding to that advice, they would not face monetary damages including the repayment of sales tax liabilities together with interest and penalties on the repayment amounts. Furthermore, defendant concedes that it defended the sales tax advice that they provided to plaintiffs. Thus, the reasonable conclusion is that plaintiffs have adequately pleaded professional negligence and misrepresentation claims so as to avoid dismissal at this stage of litigation.

*Gross Negligence*

Defendant argues that because gross negligence is different from ordinary negligence in that it is conduct that 'smacks of intentional wrongdoing', plaintiffs have failed to plead any facts that would arise to the level of gross negligence as a matter of law.

It is true that in the context of liability, "'gross negligence' differs in kind, not only degree, from claims of ordinary negligence [and] evinces a reckless disregard for the rights of others" (*see Colnaghi, U.S.A. v Jewelers Protection Servs,* 81 NY2d 821, 824 [1993]). Where a plaintiff's cause of action merely repeats the allegations for a negligence cause of action and simply adds a claim that the defendant recklessly disregarded facts, this allegation will be insufficient to meet any special pleading standards that may be required (*see Credit Alliance Corp. v Arthur Andersen & Co,* 65 NY2d 536, 554 [1985] [holding that where a cause of action for fraud repeats the allegations for negligence and merely adds a claim that defendant recklessly disregarded facts which would have apprised it that its reports were misleading, this allegation was insufficient under the special pleading standards required under CPLR 3016[b] and the case should have been dismissed]). Claims of gross negligence and recklessness have been found to be sufficiently particularized under CPLR 3016(b) where the complaint alleges that the defendant failed to independently verify provided information, despite having notice of particular

451469/2023   ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC
Motion No. 001

Page 11 of 15

11 of 15

circumstances raising doubts as to the verity of such information (see *Foothill Capital Corp. v Grant Thornton LLP,* 276 AD2d 437 [1st Dept 2000]).

Plaintiffs here have sufficiently pleaded their claim of gross negligence with sufficient particularity so as to survive the motion to dismiss. In their complaint, plaintiffs specifically allege that defendant acted with not just reckless disregard but that defendant provided different and correct sales tax advice and guidance to other similarly situated clients, while failing to notify plaintiffs of its error or take any remedial steps to mitigate the damage. Plaintiffs further allege that defendant took steps to intentionally conceal any such negligence by falsely representing to plaintiffs in 2020 that their newfound conclusions were a result of a change in law. Thus, plaintiffs have gone beyond merely adding a claim that defendant acted with a reckless disregard for plaintiffs' right and have specifically enumerated factual allegations, which if taken as true as the court must do at the pleading stage, could reasonably be found by a fact-finder to evince an utter indifference to plaintiffs' rights. Plaintiffs' claim for gross negligence withstands defendant's motion to dismiss.

*Misrepresentation Claims as Duplicative of Professional Malpractice Claim*

Defendant argues that plaintiffs' negligence and intentional misrepresentation claims should be dismissed as duplicative of professional malpractice claim because a plaintiff should not be awarded a longer statute of limitations simply by labeling a claim for accounting malpractice as fraud.

New York courts have held that fraud claims that originate from a source of duty that is different from the contractual duty that a claim of breach arises from are distinct and not duplicative (see *IS Chrystie Mgt. LLC v ADP, LLC,* 205 AD3d 418 [1st Dept 2022] [holding that where the fraud alleged was separate from the allegation that defendants' did not perform its obligations under the parties contract because of an additional misrepresentation, the claims were not duplicative]). Courts have found that the fraud claim is not rendered redundant when it is premised on defendant's intentional misrepresentations outside the scope of its contractual duties to perform (see *Wyle Inc. v ITT Corp.,* 130 AD3d 438, 441 [1st Dept 2015] [holding where a core of plaintiff's claim is that defendants intentionally misrepresented material facts about various individual loans, the claim was a separate claim for fraud notwithstanding the existence of a breach of contract claim]).

Here, as alleged, plaintiffs' misrepresentation claims are sufficiently distinct from their professional malpractice claims to withstand dismissal. Plaintiffs' malpractice claims are based on defendant's professional duty of due care and diligence, which was breached when defendant failed to exercise reasonable skill as accountants prior to giving advice to plaintiffs on April 10, 2015, or anytime

451469/2023  ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC
ACCOUNTANTS PC
Motion No. 001

Page 12 of 15

12 of 15

[* 12]

thereafter. By contrast, the misrepresentation claim goes beyond just professional malpractice to allege that defendants intentionally or negligently attempted to conceal their prior negligence and falsely represented to plaintiffs that their 2020 conclusions had changed due to a change in the law or its interpretation. It is this alleged false representation that serves as the basis for the misrepresentation claims, not merely the same malpractice alleged from the advice of the April 10, 2015 meeting.

Thus, there is sufficient basis at this juncture to conclude that plaintiffs' malpractice and misrepresentation claims are based on two separate foundations such as to avoid being duplicative (*see Wyle Inc.*, 130 AD3d at 440; *Johnson v Proskauer Rose, LLP*, 2014 WL 317839, *5 [Sup Ct, NY County, Jan. 23, 2014], *affd* 129 AD3d 59 [1st Dept 2015] ["it is proper to deny a motion to dismiss a fraud claim as duplicative of a legal malpractice claim where 'the fraud cause of action was based upon tortious conduct independent of the alleged malpractice, i.e., an alleged misrepresentation as to the eligibility of the defendant [attorney] to practice law in the State of Florida, and the plaintiffs alleged that damages flowed from this conduct'"]).

4. Damages

Defendant urges the court to dismiss categories of damages that the plaintiffs had agreed were not recoverable in the Engagement Letters (*id.* *15). Defendant avers that any allegations or claims of lost profits based upon bids on projects are purely speculative and there are no factual allegations to suggest plaintiffs will yet incur any damages from NYSDT's determination that plaintiffs were required to pay use and sales taxes (*id.* at 16). Defendant further maintains that the parties agreed to limit the damages recoverable to the lesser of actual damages incurred or two times the amount of the fee paid for the specific service from which the claimed damages arose so long as Grassi was not willfully or grossly negligent (*id.* at 16-17). At any rate, defendant argues that damages are contractually limited regardless of the claim being made by the plaintiffs because the Engagement Letters further exclude punitive or consequential damages in any event without exception (*id.* at 17-18).

Defendant argues in the alternative that certain categories of damages plaintiffs seeks should be dismissed because the Engagement Letters establish that the parties have agreed to limit damages recoverable to a set amount and limit liability regardless of the claim brought by plaintiffs.

A party may not pursue damages awards based on speculation or conjecture (*see Wathne Imports, Ltd. v PRL USA, Inc.*, 101 AD3d 83, 87 [1st Dept 2012]). In addition, contract terms that specify a sole remedy and are sufficiently clear in limiting liability are consistently approved and upheld by New York courts (*see*

**451469/2023 ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC**
**Motion No. 001**

**Page 13 of 15**

13 of 15

[* 13]

*Matter of Part 60 Put-Back Litig.,* 36 NY3d 342 [2020]*; see also U.S. Bank National Assn v DLJ Mtge Capital, Inc.,* 38 NY3d 169 [2022]). Particularly where contracts are entered into between two sophisticated parties and in the absence of countervailing public policy concerns, freedom of contract principles typically govern contractual limitations of liability and a contract is assumed to represent the parties' agreement on the allocation of risk (*see Part 60 Put-Back Litig.,* 36 NY3d 342).

That said, while contractual provisions limiting liability are generally enforceable, "[h]owever, it is New York's public policy that a party cannot 'insulte itself from damages caused by grossly negligent conduct'" (*Abacus Federal Sav. Bank v ADT Sec. Services, Inc.,* 18 NY3d 675, 682-683 [2012]) *; see also IS Chrystie Mgt LLC,* 205 AD3d 418).

Here, it is true that the Engagement Letters include a paragraph entitled "LIMITATIONS OF LIABILITY" that reads as follows:

> "Client agrees that any liability of Grassi & Co. arising out of the services provided under this agreement is limited to the lesser of actual damages incurred or two times the amount of the fee paid for the specific service from which the claimed damages arose....In no event shall Grassi & Co. or its personnel be liable to you for any punitive, consequential, lost profits, or benefit-of-the bargain damages in connection with the services provided under this agreement."

(*see e.g.* NYSCEF # 66 at 10). Because, as alleged, the limited liability provision within the Engagement Letters leaves no room for plaintiffs to ever recover upon consequential or punitive damages, this allows defendants to evade any additional liability that may result from gross negligence or willful conduct, in direct violation of standing New York law. Therefore, while damages should be limited as provided within the limited liability provision, plaintiffs may maintain an action for punitive and consequential damages if defendants' alleged conduct were found to constitute gross negligence and willful misconduct. Thus, defendant's request to dismiss plaintiff's request for punitive or consequential damages is denied at this juncture.

## CONCLUSION

Based on the foregoing, it is

ORDERED that defendant Grassi & Co, Certified Public Accountants' motion to dismiss plaintiff Island Consolidated's Amended Complaint is denied; it is further

ORDERED that within 30 days of the e-filing of this order, defendant shall file an answer to the Complaint; and it is further

**451469/2023 ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC**
**Motion No. 001**

**Page 14 of 15**

[* 14]

14 of 15

ORDERED that a preliminary conference shall be held via Microsoft Teams on February 18, 2025, at 11:30 AM or at such other time that the parties shall set with the court's law clerk. Prior to the conference, the parties shall first meet and confer to stipulate to a preliminary conference order, available at https://www.nycourts.gov/LegacyPDFS/courts/comdiv/NY/PDFs/part49-PC-Order-fillable.pdf, in lieu of a conference; and it is further

ORDERED that that counsel for plaintiff shall serve a copy of this decision, along with notice of entry, on defendant within ten days of this filing.

| 1/7/2025 | | |
| --- | --- | --- |
| **DATE** | | MARGARET A. CHAN, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | [X] NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- |
| | | GRANTED | [X] DENIED | GRANTED IN PART | [ ] OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | [ ] REFERENCE |

**451469/2023   ISLAND CONSOLIDATED ET AL vs. GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS PC**
**Motion No. 001**

**Page 15 of 15**

15 of 15